Lora S. ILHARDT, Plaintiff–Appellant,

v.

SARA LEE CORPORATION, a Maryland Corporation, Defendant–Appellee.

No. 96–3459.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1997.

Decided June 26, 1997.

Arthur Sternberg (argued), Michael J. Condron, Pedersen & Houpt, Chicago, IL, for Plaintiff–Appellant.

Gerald C. Peterson (argued), Cheryl R. Tama, Winston & Strawn, Chicago, IL, for Defendant–Appellee.

Before WOOD, Jr., COFFEY and EASTERBROOK, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

In June of 1994, Sara Lee Corporation implemented a corporation-wide reduction-in-force (RIF) affecting personnel from every department. At that time, Lora Ilhardt, an in-house attorney, differed from her law department colleagues in only two respects: she worked part-time and she was pregnant. When pressured by Sara Lee's president to reduce the size of the department, Ilhardt's supervisors, although extremely satisfied with her performance, decided to eliminate

her position. Ilhardt's supervisors say she was chosen because she worked part-time; Ilhardt maintains they let her go because she was pregnant. She sued, claiming Sara Lee violated the Pregnancy Discrimination Act (PDA) as well as the Family and Medical Leave Act (FMLA). She also argues that Sara Lee's stated reason for selecting her for the force reduction—that she worked part-time—violated Title VII because it constitutes an employment policy that has a disparate impact on women. The district court, however, found that Ilhardt's complaint had not stated genuine issues of material fact and granted Sara Lee's motion for summary judgment. Ilhardt appeals, and we affirm.

The following are the relevant facts of this case.[1] Lora Ilhardt began working for Sara Lee in April, 1988. She was the first female attorney to be hired in Sara Lee's Chicago office. After only a short time working there, she was given several raises and promoted to the Director level, entitling her to bonuses based on Sara Lee's profitability. In October, 1989, Ilhardt gave birth to her first child, and after her three-month maternity leave, she asked if she could return to work only three days a week. Her request was approved, and her salary was prorated to reflect the reduction in the amount of time she worked, and then it was increased to incorporate a yearly bonus which she received regardless of the company's productivity, unlike the other directors. Her part-time status caused some inconvenience, but on the whole both clients and coworkers were satisfied with the work Ilhardt did, and she received high marks in her yearly performance reviews.

Ilhardt began her second maternity leave in July, 1991. At that time, the legal department was planning to move into new offices.

---

1. We recite the facts mainly as given by Ilhardt in her brief. However, Sara Lee has drawn to our attention Ilhardt's failure to comply with Local Rule 12(N) of the Northern District of Illinois. Specifically, in responding to Sara Lee's Local Rule 12(M) statement in support of summary judgment, Ilhardt failed to support several of her statements with "specific references to the affidavits, parts of the record, and other supporting materials," as Local Rule 12(N)(a) requires. Most of the disagreements between the parties are a matter of simple semantics, and so they are neither genuine issues nor relevant. In

the few instances where Ilhardt disagrees with Sara Lee's version of the facts but fails to support her own version with cites to the record, or where her statements are contrary to her own earlier admissions, we will follow Local Rule 12(N)(3)(b) and will consider her to have admitted to Sara Lee's version of the facts. See Waldridge v. American Hoechst Corp., 24 F.3d 918 (7th Cir.1994); Early v. Bankers Life & Casualty Co., 853 F.Supp. 1074 (N.D.Ill.1994), aff'd, 65 F.3d 170 (7th Cir.1995); Washington v. Lake County, Ill., 762 F.Supp. 199, 200 n. 2 (N.D.Ill. 1991), aff'd, 969 F.2d 250 (7th Cir.1992).

Shortly before Ilhardt left, Gordon Newman, Sara Lee's General Counsel and the head of Ilhardt's department, circulated a floor plan which indicated where each attorney's new office would be. Ilhardt noticed that although an office was designated with her title, her name was not on the floor plan. She questioned Newman as to why her name was omitted. He responded that he wanted to wait to see if she returned to work and then determine what their needs were. Concerned, Ilhardt spoke to William Lipsman, the associate general counsel and her immediate supervisor. Lipsman told her that although Sara Lee reserved its right to reevaluate its need for a full-time attorney in the future, she could return to work part-time after her maternity leave.

In the fall of 1992, rumors of a corporate office reduction-in-force began to circulate among Sara Lee's employees. Newman decided that if he were ordered to eliminate an attorney position it would be Ilhardt's part-time position because the remaining employees could absorb a part-time attorney's work more easily than a full-time attorney's. He claims that he informed Ilhardt of this decision, but Ilhardt says she was never told her part-time position would be eliminated. In any event, Newman offered Ilhardt a new full-time position which the legal department was creating to assist with its increasing workload and Sara Lee's planned Latin American acquisitions. He indicated to Ilhardt that if she were working full-time, he would be better able to protect her job should an RIF affect the legal department. She did not accept the new job, however, as she did not consider herself qualified for some of its duties and as the job required extensive travel, which she preferred not to do. She was also contemplating another pregnancy, but did not inform Newman or anyone else at Sara Lee of those plans.

Ilhardt announced her third pregnancy in April, 1993. Aware that her job might be in jeopardy because of the impending RIF, Ilhardt told Lipsman that she would be willing to take a six-month maternity leave if that would help the law department's budget and preserve her job. Cor Boonstra, Sara Lee's president, implemented the RIF in late April, requiring every corporate office department to reduce its numbers. He met with the department heads in late May to discuss their responses. Lipsman represented the law department and when Boonstra insisted that they cut a professional from that department, Lipsman informed him of the decision to cut Ilhardt's part-time attorney position. He also told Boonstra that Ilhardt was pregnant and put her offer of taking an extended maternity leave on the table. This placated Boonstra somewhat, but he added two conditions: that Ilhardt's leave would last eight months, until the beginning of the next fiscal year, and that Sara Lee would not guarantee her a position at the end of that period. If the law department's budget permitted, however, she could return. Boonstra also agreed that Ilhardt and another pregnant employee could work until they took maternity leave instead of leaving in June with the others whose positions were eliminated.

When Lipsman told Ilhardt about this arrangement, she rejected it. Lipsman then told her she could receive her severance package either when she left to have her baby or after the end of the eight-month leave period if the budget did not allow for her return. Thinking that Ilhardt would accept the company's offer of taking a leave of absence in lieu of termination, Lipsman told the rest of the law department that none of them would be affected by the RIF. Later, Ilhardt asked whether she could save her job by returning to work full-time after her maternity leave so that the law department would have to lay off a more junior attorney. Lipsman answered that she could not do this, as she had already rejected the full-time position offered to her and the company had hired someone else to fill that position. In June of 1993 Ilhardt's name was placed on a list of personnel who were being laid off, but next to her name was the designation "extra non-paid maternity leave." On a later update of the list, she was listed as "status to be determined." In September, Sara Lee notified Ilhardt that her position had been eliminated. Ilhardt left Sara Lee on maternity leave in October and wrote a letter to Newman in November requesting to return in January. Newman responded that be-

cause her position had been terminated the previous June, she could not return. He also reminded Ilhardt that he had told her more than a year earlier that her part-time position would be cut should he have to reduce the legal department staff and she had agreed that would be a fair decision.

Ilhardt then filed a charge of discrimination with the EEOC and sued Sara Lee within 90 days of obtaining a right-to-sue letter. She alleged three federal claims: a disparate treatment claim under the Pregnancy Discrimination Act, a claim for a violation of the Family and Medical Leave Act, and a disparate impact claim of sex discrimination under Title VII. The district court granted summary judgment in Sara Lee's favor, holding that Ilhardt had not stated a prima facie case of discrimination for two reasons: (1) she could not prove that she had been treated less favorably than others outside her protected group of pregnant employees, and (2) the facts showed that she had actually been treated more favorably than non-pregnant employees. The court additionally found that Ilhardt had failed to rebut Sara Lee's stated reason for selecting her for the force reduction, that is, her part-time status. Next, the district court found that she had not established a proper claim for disparate impact because she could not prove that her selection for the RIF on the basis that she worked part-time was a pattern or practice of employment, nor could she prove that selecting employees for an RIF based on part-time status had a disparate impact on women. Finally, the court held that Ilhardt was not an eligible employee under the FMLA and there were no genuine issues as to whether her discharge violated that act.

We review a district court's grant of summary judgment de novo, *Wohl v. Spectrum Mfg., Inc.*, 94 F.3d 353, 355 (7th Cir.1996); *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir.1996), and will affirm where the record shows that no genuine issues of material fact exist from which a rational fact-finder could return a verdict for Ilhardt. *See Hill v. Burrell Communications Group, Inc.*, 67 F.3d 665, 670 (7th Cir.1995). We emphasize that the focus of our inquiry is on material facts: those

which may affect the outcome of this case under the substantive law. *See First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992). A dispute among such facts must also be genuine, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986), and an issue is genuine only when its resolution in favor of the plaintiff could prompt a reasonable jury to return a verdict for the plaintiff. *Id.* In this case, we will draw all reasonable inferences in Ilhardt's favor, and because this is an employment discrimination case where intent and credibility are particularly crucial to the outcome, we apply this standard especially rigorously. *See Wohl*, 94 F.3d at 355; *Piraino v. International Orientation Resources, Inc.*, 84 F.3d 270, 273 (7th Cir.1996); *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1042 (7th Cir.1993).

I.

The Pregnancy Discrimination Act amended Title VII of the Civil Rights Act to clarify that pregnancy discrimination is included in Title VII's prohibition on sex discrimination. *EEOC v. Northwestern Memorial Hospital*, 858 F.Supp. 759, 763 (N.D.Ill.1994). The PDA provides that "[w]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment related purposes ... as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k) (1994).

Ilhardt attacks the district court's determination that she could not state a prima facie case of discrimination under the *McDonnell Douglas* framework for indirectly proving a discrimination claim. That familiar four-part test, adapted for a pregnancy discrimination claim in a RIF context, requires Ilhardt to show that:

1.  She was pregnant (a member of a protected class) and her employer knew she was pregnant,

2.  She was performing her duties satisfactorily,

3.  She was discharged or demoted, and

4. Similarly situated employees not in the protected class were treated more favorably.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Johnson v. City of Fort Wayne, Indiana,* 91 F.3d 922, 931 (7th Cir.1996). Sara Lee acknowledges that Ilhardt has satisfied the first three elements. As for the fourth element, the district court held that because there were no other part-time attorneys in the law department, Ilhardt could not establish that nonpregnant, part-time attorneys were treated more favorably than she was. The district court also compared Ilhardt to nonpregnant full-time employees (not just attorneys) who were selected for the RIF when it noted that she was treated more favorably than they were because she was allowed to stay at work until October and the other laid-off employees left in June. Ilhardt complains that it is inconsistent and unfair to first compare her to a non-existent group of nonpregnant part-time attorneys (and refuse to compare her to nonpregnant full-time attorneys) for the purpose of establishing whether Sara Lee discharged her because she was pregnant and then to compare her to nonpregnant full-time employees to show that she was treated more favorably. She claims the court should ignore full- or part-time status and only consider that nonpregnant attorneys were retained in the legal department, while she, a member of a protected class because of her pregnancy, was not.

■ The difficulty here is obvious: we must compare Ilhardt's treatment with that of a group of similarly situated nonpregnant employees to see if she was treated worse because she was pregnant, but because Ilhardt was the only part-time member of the law department, there are no other similarly situated employees with whom to compare her. It is also clear, however, that we cannot compare Ilhardt with the nonpregnant full-time attorneys, as she suggests, because full-time employees are simply not similarly situated to part-time employees. There are too many differences between them; as illustrated in Ilhardt's case, part-time employees work fewer hours and receive less pay and fewer benefits. In order for us to make the inference that Sara Lee discriminated against her because of her pregnancy, Ilhardt must show that "she was treated less favorably than a nonpregnant employee under identical circumstances." *Hunt–Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago,* 104 F.3d 1004, 1010 (7th Cir.1997) (emphasis added). *See also McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1398 (7th Cir.1997). Because she was the only part-time attorney, she cannot do this.

■ Ilhardt must also show that her pregnancy was the reason she was treated less favorably. *See Sarsha,* 3 F.3d at 1042. She has not made this showing. Ilhardt cannot contradict the fact that Newman decided to eliminate her part-time position *before* she became pregnant. Regardless of whether he communicated this decision to her, the fact that he made the decision six months before she announced her pregnancy necessarily means he could not have made the decision because of her pregnancy. Ilhardt also asks us to infer that Sara Lee must have discharged her because she was pregnant, because, she argues, Newman and Lipsman would have decided to lay off a more junior, less experienced attorney had they honestly considered her superior performance and experience. However, Ilhardt does not dispute the fact that her part-time status caused her colleagues some inconvenience, regardless of her expertise, nor does she refute Sara Lee's position that serious morale problems would result if it laid off a full-time attorney while retaining a part-time attorney. She simply thinks Sara Lee made a bad decision, but that does not create a genuine issue of material fact sufficient to defeat a motion for summary judgment. Sara Lee made a legitimate business decision when it discharged Ilhardt instead of a full-time employee. We refuse to act as a "super-personnel department" and second-guess Sara Lee as to how best to staff its law department. *See Wolf v. Buss America, Inc.,* 77 F.3d 914, 919 (7th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 175, 136 L.Ed.2d 116 (1996), *citing Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986). The district court correctly

held that Ilhardt could not show she was treated less favorably than similarly situated, nonpregnant employees because she was pregnant; therefore, she did not establish the fourth element of the *McDonnell Douglas* prima facie case.

■ Ilhardt also attempts to avoid summary judgment outside the *McDonnell Douglas* framework by presenting either direct or circumstantial evidence of pregnancy discrimination to create a genuine issue as to whether Sara Lee's decision to select her for the RIF was motivated by the fact that she was pregnant. *See Wallace*, 103 F.3d at 1397; *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994). To evaluate this evidence, we consider whether it would, if presented at trial, prevent Sara Lee from receiving a directed verdict. *Wallace*, 103 F.3d at 1399. As her evidence of pregnancy discrimination, Ilhardt points to the incident where her name was left off the floor plan of the legal department's new office space as well as comments Newman made to the effect that he was sure she would not return to work full-time after having her third child because his daughters were extremely busy with just two children, and that he thought it was better for mothers of young children to stay at home. As her most damaging evidence, she presents a statement Newman made to her when she was trying to persuade him to choose another attorney for the RIF. When she asked him, "What if I miscarried tomorrow? What would you do then?" he responded, "I don't know what I'd do in that situation. We'd have to reevaluate it then." Ilhardt cites *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344 (7th Cir.1995), to support her characterization of these statements as direct evidence of pregnancy discrimination. But Newman's statements, even viewing them in the light most favorable to Ilhardt, do not rise to the level of pregnancy discrimination that was demonstrated in *Hennessy*, 69 F.3d at 1347–48, and they do not suggest that he disapproved of her getting pregnant, or, as Ilhardt puts it, that he considered her third pregnancy to be her "third strike." Ilhardt presents no evidence suggesting that Newman regretted hiring her because she later became pregnant, nor does she show, for example, that he

was surprised that she was pregnant because he thought she was a career woman, as was the supervisor in *Hennessy*. Furthermore, we have already held that statements expressing doubt that a woman will return to work full-time after having a baby do not constitute direct evidence of pregnancy discrimination. *Troupe*, 20 F.3d at 736.

Ilhardt has also failed to show that Newman's statements and his refusal to allow Ilhardt to resume working full-time constitute circumstantial evidence of pregnancy discrimination. Even when all the comments and incidents are viewed as a whole, the evidence does not remotely suggest that Newman reacted negatively to her third pregnancy or disapproved of it in any way. Again, Ilhardt cannot show that Newman's sentiments, whatever they were, affected his decision to choose her for the RIF, because he made that decision before he knew she was pregnant. The district court properly granted Sara Lee's motion for summary judgment on the Pregnancy Discrimination Act claim.

## II.

■ Ilhardt next claims that Sara Lee's decision to eliminate her part-time position was unlawful because it has a disparate impact on professional women with young children. To prove a disparate impact claim, Ilhardt must prove by a preponderance of the evidence that a particular employment practice had an adverse disparate impact on women on the basis of their sex. 42 U.S.C. § 2000(e)–2(k)(1)(A)(i) (1994); *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 657, 109 S.Ct. 2115, 2124–25, 104 L.Ed.2d 733 (1989). Ilhardt fails to establish each part of this claim. First, she cannot show that Sara Lee's decision to eliminate her job was a particular employment practice within the meaning of Title VII. The RIF was an isolated incident, not a regular occurrence, and a one-time decision to lay off a part-time attorney can hardly be called an employment practice. Ilhardt suggests that we consider it a practice because the number of hours an employee works is a non-individualized criterion that Sara Lee could conceivably use to

 

lay off another part-time employee in the future. This only predicts what would happen if it were an employment practice, however; it is not evidence that Sara Lee actually has such a practice. We require more proof than mere speculation to hold that Sara Lee has an actual employment practice of laying off part-time workers.

■ Next, Ilhardt fails to prove that such a policy, if it exists, has a disparate impact on women because of their sex. She cites studies done in the 1970s and 1980s which have found that the majority of part-time workers are women with child-care responsibilities, and she asks the court to take judicial notice of the results. If we are to take judicial notice of a fact, however, that fact must be indisputable, *Hennessy*, 69 F.3d at 1354, and the decades-old conclusions of the studies Ilhardt presents are certainly subject to dispute. As this is the only evidence Ilhardt has presented to support her claim, she has not demonstrated that a genuine issue of material fact exists as to whether Sara Lee has a policy of favoring full-time over part-time workers, or whether such a policy has a disparate impact on women. Summary judgment was properly granted.

### III.

■ Finally, Ilhardt argues that Sara Lee violated her rights under the FMLA by not allowing her to return to work after her maternity leave. The district court held that the FMLA did not apply to her claim because it took effect in October, 1993, after she was laid off in June, 1993. Furthermore, even if the act did apply, Sara Lee had no obligation to reinstate Ilhardt because an employer's responsibility to continue FMLA leave and restore an employee "cease at the time the employee is laid off," 29 C.F.R. § 825.216(a)(1). Ilhardt argues that she was not laid off, but was fired because she refused to agree to Sara Lee's offer to let her take eight months of maternity leave with no assurance that she could return. The unrefuted evidence clearly shows, however, that her position was eliminated as part of the RIF in June, although she was allowed to continue working until she took her maternity leave in October. Thus, under the FMLA,

Sara Lee had no obligation to offer her reinstatement.

The district court's rulings are AFFIRMED.