Gina PIRAINO, Plaintiff–Appellant,

v.

INTERNATIONAL ORIENTATION
RESOURCES, INC., Defendant–
Appellee.

No. 96–3998.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1997.

Decided March 3, 1998.

Lisa Kane (argued), Kane & Associates, Chicago, IL, for Plaintiff–Appellant.

Jill D. Jones, Barnes & Thornburg, Elkhart, IN, Samuel G. Levin, Siegel, Lynn & Capitel, Northbrook, IL, Bradley B. Falkof (argued), Barnes & Thornburg, Chicago, IL, for Defendant–Appellee.

Before BAUER, KANNE and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

Gina Piraino alleges International Orientation Resources ("IOR") terminated her employment in violation of the Pregnancy Discrimination Amendment to Title VII, 42 U.S.C. § 2000e(k), commonly called the Pregnancy Discrimination Act ("PDA"). In May 1995, the district court entered summary judgment in favor of IOR. Piraino appealed to this Court, and we reversed and remanded to the district court for trial. *See Piraino v. International Orientation Resources, Inc.*, 84 F.3d 270 (7th Cir.1996). In October 1996, after a two-day bench trial, the district court entered judgment in favor of IOR. Piraino now appeals from that judgment. Because we hold that the district court did not clearly err in finding that IOR did not intentionally discriminate against Piraino because of her pregnancy, we affirm the judgment of the district court.

## I. HISTORY

We recite here the district court's findings of fact as set forth in its oral ruling dated October 29, 1996. IOR provides cross-cultural training to American families and individuals who are relocating overseas and foreign families and individuals entering the

United States for extended periods of time. Piraino applied for a position as a full-time trainer with IOR in July 1990. After interviews with Fran Perlman, the Director of Human Resources, Stephanie Derderian, the Director of Training, and Noel Kreicker, IOR's President, Perlman extended an offer of employment to Piraino. Piraino began work at IOR in August 1990. She was four months pregnant at the time but did not immediately reveal this condition to her new employers.

In September 1990, Piraino disclosed to Perlman, Derderian, and Kreicker that she was five months pregnant. She stated that she wished to return to work after the delivery of her child. At that time, Perlman, Derderian, and Kreicker told her not to worry and that they did not think it would be a problem. Neither Perlman, Derderian, nor Kreicker advised Piraino about an unwritten leave of absence policy.

Prior to Piraino's request for a leave of absence, IOR had six employees request such leaves. Each of these six employees had been employed at IOR for longer than a year. At the time Piraino requested her leave, no employee with less than one year of service had requested leave.

In November 1990, IOR issued a written leave of absence policy. The policy provided the following terms:

Unpaid Leaves of Absence

Under certain circumstances, you may be eligible for a leave of absence. The length and conditions of the leave depends [sic] upon:

1. your length of service with IOR
2. the reason for requesting leave

1. Leaves of absence may be granted to employees who have been with the company for a minimum of one year.

For employees that have been with the company for less than one year, efforts will be made to place the returning employee into the same or similar position if possible. During any period of leave, IOR reserves the right to fill, alter, or eliminate a vacant position if required by business needs. If a position which is vacant due to an approved leave of absence is filled, IOR

will make a reasonable effort to offer the employee an equivalent position when he or she is ready to return to work....

2. Types of Leave

Maternity Leave

Upon completion of a minimum of one year with the company, employees may request up to six weeks leave for maternity. Maternity leave shall begin upon receipt by your department manager of a physician's letter advising you not to work until after the birth of your child. Upon completion of four weeks leave, it is the responsibility of the employee to notify the department manager as to the date of return to work or request additional leave. Failure to notify will be considered as giving notice of voluntary resignation. IOR will hold a position open for a period of six weeks. If at four weeks, an extension is requested and granted beyond the original six weeks leave, IOR reserves the right to fill, alter or eliminate a vacant position if required by business needs.

There is some dispute over whether the treatment of the six employees with more than a year of service established a leave of absence policy for that class of employees. However, it is certain that prior to this written policy there was no policy, written or unwritten, governing leaves for employees with less than a year of service.

After IOR issued this policy, Piraino spoke with Kreicker and Perlman and reiterated her desire to return to work after her delivery. Piraino continued to work until the day of her delivery in the latter part of December. Immediately thereafter Piraino contacted IOR and asked what she needed to do to return to work. Perlman told Piraino that she had voluntarily quit her employment and that she could reapply for a position with IOR.

In the final quarter of 1990, IOR experienced financial losses. For that quarter IOR posted a net loss of over $73,000. For the year ending December 31, 1990, IOR posted a net loss of over $51,000. Beginning in January 1991, IOR experienced a substantial downturn in business.

In mid-December 1990, IOR announced that two clerical employees, Lynda Hamby and Barbara McDaniel, would be assuming positions as part-time trainers. These two employees assumed most of Piraino's training duties and some of her other responsibilities. IOR's decision to staff the training function with full-time employees who did training only part-time reflected IOR's larger business strategy. IOR decided to focus on marketing and business training and to devote fewer resources to the family training area in light of the decline in demand for family training programs.

In accord with this new focus, IOR hired additional employees to assist in the marketing area. In the process of selecting a new employee for the marketing department, IOR interviewed Scott Lax and Patrick Coughlin. IOR hired Lax for the marketing position and, in light of Coughlin's business and marketing background, IOR hired Coughlin to do both training and marketing. IOR had no reason to believe that Piraino was qualified to assume the dual role of trainer and marketer.

In February 1991, approximately six weeks after leaving to have her baby, Piraino returned to IOR's offices and expressed her desire to begin working again. Derderian advised Piraino that there were no positions available for her. IOR did not hire another full-time trainer until mid–1992.

## II. ANALYSIS

In 1978, Congress amended Title VII of the Civil Rights Act of 1964 to prohibit discrimination on the basis of pregnancy. The PDA provides that "women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work." 42 U.S.C.

§ 2000e(k). To prove discrimination under the PDA, Piraino must show that " 'she was treated less favorably than a nonpregnant employee under identical circumstances' ... [and] that her pregnancy was the reason she was treated less favorably." *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1155 (7th Cir. 1997) (quoting *Hunt–Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1010 (7th Cir.1997)). The district court found that Piraino failed to make a showing of intentional discrimination.

"Because a finding of intentional discrimination is a finding of fact, the standard governing appellate review of a district court's finding of discrimination is that set forth in Federal Rule of Civil Procedure 52(a)." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *see also Pignato v. American Trans Air, Inc.*, 14 F.3d 342, 346 (7th Cir.1994). Rule 52(a) provides as follows: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The clearly erroneous standard is a high one to meet; "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must ... strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir.1988). When findings of fact are based on determinations about witnesses' credibility, the deference accorded the trial judge is even more significant "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*, 470 U.S. at 575, 105 S.Ct. at 1512.[1]

---

1. While the *McDonnell Douglas* burden-shifting framework applies to claims under the PDA, this framework falls away once the trial is completed and the court renders a judgment. *See Grohs v. Gold Bond Bldg. Prods.*, 859 F.2d 1283, 1286 (7th Cir.1988) ("Once the case has been tried ... the rules about the prima facie case, defendant's response and methods of proof are no longer relevant."); *see also United States Postal Serv.*

*Bd. of Governors v. Aikens*, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983). Post-trial we consider only whether the record supports the resolution of the ultimate question of intentional discrimination. This is particularly true in the present case because the district court short-circuited the *McDonnell Douglas* analysis by assuming that Piraino had established a prima facie case and that IOR had

■ We hold that the district court did not commit clear error in finding that IOR did not intentionally discriminate against Piraino because of her pregnancy. Piraino points to the suspicious timing of the new leave of absence policy as evidence of discrimination. Suspicious timing can constitute circumstantial evidence to support a claim of discrimination, *see Hunt–Golliday,* 104 F.3d at 1011, but timing alone is insufficient. Piraino must show some connection between her pregnancy and the adverse action taken against her. *See Ilhardt,* 118 F.3d at 1155. Piraino has come forward with no such evidence. She has not shown that if all the facts were identical but she were not pregnant, she would have been treated differently. As explored in oral argument, Piraino has no evidence to suggest that if her situation involved, for example, a preplanned tonsil surgery necessitating a six-week leave of absence, she would have been granted a leave of absence or allowed to return to work after her leave. In short, the fact that the person who prompted IOR to establish a leave of absence policy for employees with less than a year of experience happened to be pregnant does not establish discrimination. Therefore we do not find clear error in the district court's conclusion that the timing of the policy fails to suggest pregnancy discrimination.

■ The terms of the policy itself also do not suggest intentional discrimination. The policy is facially neutral; it draws no distinctions between pregnant and nonpregnant persons for leave eligibility purposes. If the policy discriminates at all, it discriminates between those employees with more than or less than a year of service with the company. An employee's length of service, however, does not place her in a protected class. Additionally, the district court found that the one-year of service delineation was based on legitimate business reasons. Kreicker explained at trial that IOR's policy made a distinction between employees with more than and less than a year's service because it takes a year for an employee to become an effective contributor to the company. In the case of trainers, IOR requires an extensive training program, and IOR does not expect that a trainer will be proficient for at least six months to a year. Piraino does not provide evidence that this justification was illegitimate; instead she suggests only that Kreicker's testimony in its entirety is not credible.[2] In light of our deference to the district court on credibility matters, we cannot hold that its conclusion crediting IOR's business reasons for the one-year provision is clear error.

■ Piraino also suggests that the fact she was not rehired after her leave is evidence of discrimination. Again, she fails to provide evidence that IOR's failure to rehire her was based on her (former) pregnancy, choosing instead to argue on appeal that the district court should not have believed any of Perlman's, Derderian's, or Kreicker's testimony. We defer to the district court's credibility determinations and note, again, that Piraino must establish some connection between the adverse action and her pregnancy. Without such a connection the district court could not find that IOR intentionally discriminated against her. In further support of its "no discrimination" finding, the district court found that IOR had a legitimate business reason for not rehiring Piraino—IOR experi-

articulated a nondiscriminatory reason for the action taken. The district court thereby proceeded to address the ultimate question: whether there was evidence of discrimination.

2. Piraino's strategy on appeal is to claim that the court should disregard in its entirety Perlman's, Derderian's, and Kreicker's testimony. Piraino argues that these three lied about the existence of an unwritten policy governing leaves of absences for employees with less than a year of service. In light of this so-called "perjury," Piraino argues that the court should not have credited any of their testimony. The Supreme Court has warned that such attacks on credibility rarely succeed: "[W]hen a trial judge's finding is based on his decision to credit the testimony of one or two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson,* 470 U.S. at 575, 105 S.Ct. at 1512. Additionally, it is within the district judge's discretion to believe or disbelieve testimony based on the overall credibility of the witness; a misleading statement does not require the judge to disbelieve everything the witness says.

enced a sharp downturn in business and simultaneously made the strategic decision to focus on areas in which Piraino was not trained. Therefore the district court did not clearly err in concluding that IOR's failure to rehire Piraino is not sufficient evidence of discrimination.

■■■ Piraino argues that the fact that IOR treated her leave as a voluntary resignation proves discrimination. Perlman told Piraino that her leave would be treated as such, but the written policy does not explicitly contain this provision. However, the policy may be read to imply such a conclusion; only employees who have a year of service are granted leaves of absence, and only those employees are guaranteed a "reasonable effort" to find them an equivalent position if their position is filled during their absence. Employees without the year of service are only guaranteed "efforts" to place them in the same or similar position if possible. It certainly does not contradict the policy to interpret a leave as a resignation; if the employee is not eligible for a leave of absence, this Court struggles to find an alternate characterization for a six-week unauthorized absence. Regardless, Piraino did not provide evidence to the district court that IOR characterized her leave as a resignation because of her pregnancy. Piraino has no evidence that IOR would have treated the employee with the tonsillectomy any differently. The district court did not specifically address this argument in its orally announced decision. However, because this argument is ultimately unpersuasive, it does not affect our holding that the district court did not clearly err in concluding that Piraino failed to sustain her burden.

■■■ Finally, at oral argument, Piraino's counsel argued that IOR's characterization of her leave as a voluntary resignation was "draconian." This does not get Piraino very far. The PDA does not require that employers treat pregnant employees well; "[e]mployers can treat pregnant women as badly as they treat similarly affected but nonpregnant employees." *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 738 (7th Cir.1994). Because Piraino has not provided any evidence to the contrary, we must conclude that

Piraino was treated as badly as any other employee without a year of employment would have been treated under the policy. Her pregnancy did not affect her treatment.

In light of our deferential standard of review and the dearth of evidence suggesting that IOR's actions were connected to Piraino's pregnancy, we Affirm the judgment of the district court.