Charles COLLINS, Plaintiff–Appellee,

v.

D.J. KIBORT and Educational Therapy
Center, Defendants–Appellants.

No. 97–2332.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 5, 1998.

Decided May 1, 1998.

R. Ronnae Black, Sr., East St. Louis, IL, Laura Robinson (argued), Centreville, IL, for Plaintiff–Appellee.

John L. Gilbert (argued), Reed, Armstrong, Gorman, Coffey, Gilbert & Mudge, Edwardsville, IL, for Defendants–Appellants.

Before CUMMINGS, CUDAHY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Charles Collins claims that his employer, the Educational Therapy Center ("ETC"), intentionally discriminated against him because of his race when it reduced his employment status from full-time to part-time. To remedy this alleged wrong, he sued ETC and its director, D.J. Kibort, under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–2. A jury found that ETC and Kibort did discriminate against Collins. We affirm the judgment for Collins and against ETC, vacate the judgment against Kibort, vacate the jury's compensatory damages award and the district court's judgment for back pay, and remand for a new trial on damages.

## I. History

ETC is a publicly funded school that serves the needs of students with behavioral disorders. Before 1991, ETC consisted of two buildings on separate campuses: one in the racially mixed area of Madison, Illinois, the other in the predominantly white area of Cottage Hills, Illinois. ETC hired Collins in 1981 as a custodian for the Madison campus, and it hired Jerry Estes in 1991 as a custodian for the Cottage Hills campus. Kibort became the director of ETC in 1990. Collins is black; Estes and Kibort are white.

Before the start of the 1991–1992 school year, ETC decided to consolidate its facilities into the north campus located in Cottage Hills. During that school year, Kibort met with Estes and Collins to establish their respective responsibilities. Kibort assigned Collins the job of cleaning the bulk of the building, including all seventeen classrooms, the gym, the kitchen, and the teachers' lounge. Kibort asked Estes to perform some cleaning but also requested that he drive the bus on all field trips, provide student transportation when necessary, retrieve lunches from the local school district, maintain the buses, and cut the grass.

In planning for the 1993–1994 school year, Kibort decided to downsize the custodial staff to one full-time and one part-time custodian. She believed that the building did not need a full-time cleaning person. To determine whose hours would be reduced, Kibort watched the two men work, considered the length of service of the employees, and reviewed their personnel files. She determined that Estes was the better choice for the transportation and maintenance needs of ETC, a full-time commitment, while Collins was better suited to handle the cleaning responsibilities on a part-time basis. Kibort informed Collins of her decision to reduce him to part-time status on March 3, 1993.

Collins believes that she also considered his race. According to Collins, before Kibort raised the issue of downsizing, he approached her, wondering whether he could help with ETC's transportation and maintenance needs other than cleaning. During this conversation, he offered to get his commercial driver's license. Kibort rejected this request, saying

"it would cause a problem." Collins says that Kibort never explained what she meant by that comment. Kibort swears the conversation never occurred.

When Kibort notified Collins that she was reducing his position to part-time, she gave him, a written notice and explained that health insurance was available. As a full-time employee, ETC paid for Collins' health insurance. Kibort informed him that part-time employees have an option of paying half of the insurance premium and ETC would pay the other half. Collins elected to go without health insurance. Within a year, Collins was hospitalized and incurred substantial medical bills. He has been unable to pay these bills.

On April 28, 1993, Collins filed a grievance with the Equal Employment Opportunity Commission ("EEOC"). On May 31, 1994, the St. Louis District Office of the EEOC provided Collins with "notice of his right to sue" on a charge of discrimination. See 42 U.S.C. § 2000e–5(b), (e).

On August 31, 1994, Collins initiated an action against ETC and Kibort for race discrimination arising from his transfer from a full-time to a part-time position. He sought declaratory and injunctive relief as well as damages for the difference in salary between the full-time and part-time positions, for the loss of his health insurance benefits, and for the medical expenses which he incurred while he did not have health insurance. ETC and Kibort defended the suit by arguing that Collins was not qualified for the full-time position, that he was offered health insurance but refused it, and that legitimate, nondiscriminatory business reasons supported their employment decision.

A three-day trial ensued before a jury in June 1996. The trial produced a verdict for Collins and against ETC and Kibort for $96,034.80 in compensatory damages. In its judgment on the verdict, the district court ordered Kibort and ETC to pay $471 for court costs and $54,943.75 for attorneys' fees. The court also ordered ETC to reemploy Collins as a full-time custodian with full benefits and privileges, ordered a judgment for the amount of the wages and benefits unlawfully withheld by ETC when it reduced him

from full-time to part-time employment, and ordered that ETC and Kibort refrain from other discriminatory acts against Collins and others similarly situated. See Judgment, *Collins v. Kibort*, No. 94–CV–644, slip op. at 1–2 (S.D.Ill.Dec. 9, 1996).

After the district court denied ETC's and Kibort's post-trial motions, they filed a timely appeal with this Court. ETC and Kibort claim that the district court erred 1) in denying their motion for judgment as a matter of law; 2) in becoming an advocate for the plaintiff in its questioning of Kibort; 3) in admitting inadmissible evidence; and 4) in awarding duplicative remedies in its judgment on the verdict.

## II. ANALYSIS

Before we reach the questions raised on appeal, we have a matter of judicial housekeeping to resolve. In his original complaint, Collins named as defendants not only ETC but also Kibort "individually and as a managerial employee" of ETC. On October 11, 1994, Kibort moved to dismiss the claim against her in her individual capacity. On November 11, 1995, the district court granted Kibort's motion, noting that employees may be sued only in their official capacities as agents of the employer. *See Williams v. Banning*, 72 F.3d 552, 555 (7th Cir.1995) (holding that a supervisor does not, in her individual capacity, fall within Title VII's definition of employer); *see also Bryson v. Chicago State Univ.*, 96 F.3d 912, 917 (7th Cir. 1996) (same).

After a series of unrelated procedural steps, Collins filed a second amended complaint on December 14, 1994. According to the caption, the defendants are Kibort, in her official capacity, and ETC. The complaint, however, only states a claim against ETC. It does not include a claim against Kibort. The caption is plainly incorrect. A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.

Unfortunately, neither the parties nor the district court reduced the official caption for this suit to list ETC as the only defendant. In fact, according to the caption of subse-

quent pretrial motions, Collins continued his suit against Kibort, individually and in her managerial capacity, and against ETC. These captions are incorrect. ·

While an erroneous caption is not fatal to a suit, the caption caused serious problems at trial. It appears that the trial court relied on the caption in drafting the verdict form. The verdict form stated that the jury found "in favor of the Plaintiff, Charles Collins, and against the Defendants, Debra Kibort and The Education Therapy Center." Kibort ceased being a party to the litigation in her individual capacity on November 11, 1995 when the district court dismissed this count and ceased being a party altogether when Collins filed his second amended complaint on December 14, 1995. *See Duda v. Board of Education of Franklin Park Pub. Sch. Dist. 84*, 133 F.3d 1054, 1057 (7th Cir.1998) (reasoning that an amended complaint supersedes the original complaint and renders it of no legal effect); *Wellness Community Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995) (same). Thus, ETC was the only defendant in this suit and the verdict form incorrectly listed Kibort as a defendant. We therefore vacate the judgment against Kibort.[1]

### A.

ETC claims that the district court erred by denying its motion for judgment as a matter of law. *See* Fed.R.Civ.P. 50(a). We review the denial of this motion *de novo*, *see Emmel v. Coca–Cola Bottling Co.*, 95 F.3d 627, 629 (7th Cir.1996); however, we limit our inquiry to whether the evidence presented, combined with all the reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed. *See Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 960 (7th Cir.1996); *Tapia v. City of Greenwood*, 965 F.2d 336, 338 (7th Cir.1992). We will overturn a jury verdict for the plaintiff only if we conclude that "no rational jury could have found for the plaintiff." *Emmel,*

95 F.3d at 630. "We apply this standard stringently in discrimination cases, where witness credibility is often crucial." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 948 (7th Cir.1998).

While the parties present this question as whether Collins established that ETC's reasons were pretextual under the *McDonnell Douglas* burdenshifting framework, this framework falls away once a trial is completed and a judgment is rendered. *See Piraino v. International Orientation Resources, Inc.*, 137 F.3d 987, 990 n. 1 (7th Cir.1998); *Grohs v. Gold Bond Bldg. Prods.*, 859 F.2d 1283, 1286 (7th Cir.1988); *see also United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983). "Post-trial we consider only whether the record supports the resolution of the ultimate question of intentional discrimination." *Piraino,* 137 F.3d at 990 n. 1.

Collins' reduction-in-hours claim arises under 42 U.S.C. § 2000e–2(a), which makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." ETC denies that race played a factor in its decision and claims that budgetary constraints and performance evaluations provided the basis for its decision to reduce Collins' hours. ETC asserts that it considered Estes a better worker who provided more services for the building than Collins.

Yet, Kibort's and Collins' testimony suggests that Kibort was uncomfortable with Collins interacting in the predominantly white Cottage Hills community. The way Kibort rescheduled Collins' work hours and assignments had the effect of separating him from the surrounding community. Collins testified that Kibort told him that "it would cause a problem" if he did the same jobs that Estes performed, even though these tasks were the same ones that Collins had previously performed at the Madison, Illinois campus of ETC. There are multiple reasons why Kibort could have thought that a problem

---

1. The fact that Kibort was not a defendant does not affect the jury verdict for Collins and against ETC. As we establish *infra*, sufficient evidence existed for a rational jury to find that ETC intentionally discriminated against Collins because of his race.

would arise if Collins helped with these assignments. One is that the custodians would be tripping over each other as they performed the same tasks while less desirable cleaning chores went undone. Another is that Kibort believed that Collins' race would cause difficulty in the community. Drawing all reasonable inferences from this evidence in Collins' favor, we conclude that a rational jury could have found that intentional race discrimination motivated Collins' reduction in hours. The district court did not err in denying ETC's motion for judgment as a matter of law.

### B.

■ ETC also argues that we should reverse the jury verdict because the trial judge advocated for the plaintiff when he elicited testimony from Kibort. We review the propriety of a judge's examination of a witness for abuse of discretion. See *United States v. Albers*, 93 F.3d 1469, 1484 (10th Cir.1996).

The trial judge's allegedly impermissible conduct occurred after defense counsel finished questioning Kibort in its case-in-chief. Both parties had raised the issue of whether a seniority system applied to the custodial staff at ETC. The court asked a series of questions to determine when ETC uses seniority as a criterion during a reduction-in-force and when it does not. Specifically, it questioned Kibort how ETC would determine whose hours to reduce if ETC needed to reduce the hours of its teachers, program assistants, office staff, recreation therapists, and custodians. Kibort explained that teachers, program assistants, and recreation therapists are covered by a collective bargaining agreement which requires that ETC decide by seniority. Office staff and custodians are not covered by this agreement, and ETC would evaluate each employee to determine who was the most appropriate candidate using seniority as only one of many factors.

■ The trial judge's authority to question witnesses is beyond dispute. *See* Fed. R.Evid. 614(b); *see also United States v. Gonzalez-Soberal*, 109 F.3d 64, 72 (1st Cir. 1997); *Albers*, 93 F.3d at 1485; *Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1187 (7th

Cir.1992). A judge reaches beyond this authority when he or she abandons the proper role and assumes the role of an advocate or betrays "even a hint of favoritism toward either side." *Ross*, 977 F.2d at 1187; *see also* Fed.R.Evid. 614(b) advisory committee's notes. With that being said,

> "[i]t cannot be too often repeated, or too strongly emphasized, that the function of a federal trial judge is not that of an umpire or of a moderator at a town meeting. He or she sits to see that justice is done in the cases ... and to see that a case on trial is presented in such [a] way as to be understood by the jury.... [A federal trial judge] should not hesitate to ask questions for the purpose of developing the facts; and it is no ground of complaint that the facts so developed may hurt or help one side or the other."

*United States v. Jones*, 730 F.2d 593, 598 (10th Cir.1984) (quoting *Simon v. United States*, 123 F.2d 80, 83 (4th Cir.1941)).

After reviewing the trial judge's questions, we do not find an abuse of discretion. The court's brief line of questioning was impartial and was conducted to clarify Kibort's testimony. It addressed an area that the parties already raised. The questions did not favor either side. ETC's real problem is with the testimony elicited, not the judge's questions. We agree with the courts in *Jones* and *Simon* that this is not a proper ground of complaint.

### C.

■ ETC also claims that it merits a new trial based on the district court's evidentiary errors. We review a district court's evidentiary rulings for an abuse of discretion. *See United States v. Whitaker*, 127 F.3d 595, 601 (7th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1098, 140 L.Ed.2d 153 (1998); *United States v. Payne*, 102 F.3d 289, 294 (7th Cir.1996). Because trial courts are in the best position to make decisions regarding evidentiary matters, appellate courts give special deference to these rulings. *See Klonowski v. International Armament Corp.*, 17 F.3d 992, 995 (7th Cir.1994). Under an abuse of discretion standard of review, a

reversal is warranted "only when the trial judge's 'decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based that decision, or where the supposed facts found are clearly erroneous.'" *Wheeler v. Sims*, 951 F.2d 796, 802 (7th Cir.1992) (quoting *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563–64 (7th Cir. 1984)); *see also Finchum v. Ford Motor Co.*, 57 F.3d 526, 530 (7th Cir.1995).

 First, ETC asserts that the district court erred in denying its motion in limine to exclude evidence regarding Collins' health. ETC claims that Collins does not have the expertise to testify about his medical condition and that his health after the employment decision is irrelevant. The court allowed Collins to testify that he had a hernia and bleeding ulcers which required medical treatment after he lost his health benefits. According to ETC, mentioning Collins' health was highly prejudicial in part because Collins' counsel had stipulated that ETC's conduct did not cause Collins' medical conditions.

We do not see an abuse of discretion here. A witness does not need to be a doctor to discuss his or her health in general terms. *See* Fed.R.Evid. 601, 701, 702. Collins did not discuss his ailments in detail, and he also did not suggest that ETC caused his medical condition. He simply explained why he was in the hospital in November 1994. His hospital bills are relevant damages in this case because ETC provided health insurance for Collins at no cost to him while he was a full-time employee but not when he was a part-time employee. Thus, the court properly admitted this testimony.

2. Fed.R.Evid. 803(6) provides:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
. . .
**(6) Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was

 Second, ETC argues that the district court erred by allowing Collins to testify about his medical bills because they are inadmissible hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted, *see* Fed.R.Evid. 801(c); the medical bills fit this definition. ETC contends that the trial court abused its discretion in admitting these medical bills because Collins did not establish sufficient foundational evidence to satisfy the hearsay exception for business records. *See* Fed.R.Evid. 803(6).[2]

Medical bills are admissible as business records under Fed.R.Evid. 803(6) if a proper foundation as to the reliability of the records is established. *See United States v. Briscoe*, 896 F.2d 1476, 1494 (7th Cir.1990). A proper foundation is established if the party attempting to admit the evidence demonstrates that the business records "'are kept in the course of regularly conducted business activity, and [that it] was the regular practice of that business activity to make records, as shown by the testimony of the custodian or otherwise qualified witness.'" *Id.* (quoting *United States v. Chappell*, 698 F.2d 308, 311 (7th Cir.1983)).

We do not doubt that Collins' hospital maintains its bills in the course of its regularly conducted activity and that it was part of this hospital's regular business practice to create and maintain its bills. However, no one from the hospital testified that it was the regular business practice of the hospital to assemble and maintain the billing records of its patients in the manner presented at trial. In fact, Collins' counsel did not call anyone from the hospital; instead, counsel only asked Collins if the bills looked familiar.

 While Rule 803(6) does not require that the qualified witness be the person who

the regular practice of that business activity to make the memorandum, report, record, or data compilation, *all as shown by the testimony of the custodian or qualified witness*, unless the source of the information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
(emphasis added).

prepared the record, *see United States v. Moore*, 923 F.2d 910, 915 (1st Cir.1991), or that the witness have personal knowledge of the entries in the records, *see United States v. Lawrence*, 934 F.2d 868, 870 (7th Cir.1991), the business records exception does require that the witness have knowledge of the procedure under which the records were created, *see United States v. Wables*, 731 F.2d 440, 449 (7th Cir.1984). Collins is not qualified to testify about the reliability of these medical bills as he knows nothing about the billing practices at the hospital. It was an abuse of the district court's discretion to admit this testimony without sufficient foundation.

■ Third, ETC claims that the trial court erred in denying its motion in limine to bar Collins' diary as evidence because it was hearsay. Collins submitted the diary entries to prove that the events reported therein actually occurred. *See* Fed. R. Evid. 801(c). As such, the diary entries are hearsay. Collins counters that the diary satisfies the hearsay exception for recorded recollections. *See* Fed. R. Evid. 803(5).[3]

For a diary to be admissible under Rule 803(5), the party seeking to admit the document must establish 1) that the record concerns a matter about which the witness once had knowledge but now has insufficient recollection to testify fully and accurately; and 2) that the witness made or adopted the record when the matter was fresh in the witness's memory and the record reflects that knowledge correctly. *See* Fed.R.Evid. 803(5); *United States v. Severson*, 49 F.3d 268, 271 (7th Cir.1995); *United States v. Lewis*, 954 F.2d 1386, 1393 (7th Cir.1992).

At trial, Collins recognized his diary. He explained that he started keeping a diary on March 3, 1993, the day his hours were reduced, and that each entry is his version of an episode with Kibort which he recorded when he returned to his home. Collins testi-

fied about his interactions with Kibort by reading passages from his diary. *See* Trial Tr. Vol. V at 41–42. Collins' counsel then moved for the diary's admission into evidence as an exhibit. After examining the document, the court accepted the diary as plaintiff's exhibit 7. *See id.* at 136.

The trial court erred in allowing Collins to rely on his diary while testifying. Collins did not state that he could not recall the events about which he used his diary to testify. In fact, in other portions of his testimony, Collins recalled these events in detail. See *id.* at 9–11. Thus, Collins did not lay the proper foundation for the diary's admissibility. The trial court also should not have admitted the diary as an exhibit into evidence. *See* Fed. R.Evid. 803(5). Even if Collins had satisfied Rule 803(5)'s admissibility requirements, the diary itself may not be received as an exhibit unless it is offered by an adverse party. *See Lewis*, 954 F.2d at 1393 n. 6; Michael H. Graham, *Handbook of Federal Evidence* § 803.5 (4th ed.1996). Because Collins did not satisfy the requirements of Rule 803(5), the diary is inadmissible hearsay.

■ Finally, ETC asserts that the district court erred in admitting evaluations of Collins made subsequent to the decision to reduce his hours because these evaluations were irrelevant to the employment decision. We agree. Subsequent performance evaluations are not relevant to determining whether ETC reduced Collins' hours because he was black. Collins' counsel used these evaluations against ETC to suggest that ETC always considered Collins a valued employee with over a decade of experience. Performance evaluations made months and years after Collins' reduction in hours do not aid in determining whether he was a valuable employee on March 3, 1993. Thus, their prejudicial value substantially outweighs their probative effect. *See* Fed.R.Evid. 403. The

---

3. Fed.R.Evid. 803(5) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

**(5) Recorded Recollection.** A memorandum or record concerning a matter about which a witness once had knowledge but now has insuffi-

cient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

trial court abused its discretion in admitting this evidence.

We now turn to whether the district court's errors in admitting this evidence were harmless. *See United States v. Wimberly,* 60 F.3d 281, 286 (7th Cir.1995); *United States v. Saunders,* 973 F.2d 1354, 1359 (7th Cir.1992). "No error in either the admission or exclusion of evidence … is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." Fed.R.Civ.P. 61. Evidentiary errors satisfy this standard only when a significant chance exists that they affected the outcome of the trial. *See DeBiasio v. Illinois Cent. R.R.,* 52 F.3d 678, 685 (7th Cir.1995).

Even when viewed together, we believe these errors are harmless as to ETC's liability. If we remove every piece of documentary evidence and every statement from the trial transcript that covered Collins' medical bills, his statements from his diary, and his subsequent evaluations, sufficient evidence remains for a jury to determine that ETC's reasons for reducing Collins' hours were pretextual. Also, the impact of the erroneously admitted evidence was not so overpowering that it would taint the jury when it viewed the other portions of the evidence. Because other evidence remains which satisfied the elements of Collins' Title VII claim, we conclude that these errors did not impact the jury's determination of liability.

The admission of the medical bills, however, was not harmless error in the jury's calculation of the damages ETC owes Collins. Reimbursement for medical expenses was a major component of Collins' compensatory damages request. A significant chance exists that the jury took the amount of Collins' medical bills into account in totaling its compensatory damages award of $96,034.80. We therefore vacate the jury's award and remand this proceeding for a new trial on damages.

4. ETC also argues that the district court erred in giving Collins' version of the jury instruction that detailed the components of compensatory dam-

### D.

Finally, ETC suggests that the district court erred by awarding Collins back pay as this award is duplicative of the jury's award for compensatory damages.[4]

The fourth jury instruction detailed how the jury should calculate compensatory damages if it determined that ETC discriminated against Collins. In this instruction, the district court stated in part that:

If you find that the defendants acted unlawfully, plaintiff is entitled to the back pay he would have earned if the defendants had not wrongfully reduced plaintiff's job. This amount consists of the wages and employee benefits plaintiff would have received from the date of the discriminatory job reduction to the date of trial.

The jury returned a general verdict of $96,034.80. The district court then entered a judgment which included this sum for compensatory damages as well as a judgment "for the amount of wages and benefits unlawfully withheld by [ETC] when [it] dropped Plaintiff from full-time to part-time employment." In rejecting ETC's post-trial motions, the district court summarily concluded that this award was appropriate. See Order Denying Motion for Judgment as a Matter of Law, *Collins v. Kibort,* 94 CV 644, slip op. at 4 (S.D.Ill. May 5, 1997).

We review the district court's decision to uphold its award for an abuse of discretion. *See Stafford v. Puro,* 63 F.3d 1436, 1444 (7th Cir.1995); *Ross,* 977 F.2d at 1189. Title VII's remedial scheme is designed to make a plaintiff whole. *See Williams,* 137 F.3d at 952–53; *McKnight v. General Motors Corp.,* 908 F.2d 104, 116 (7th Cir.1990). In this case, a strong likelihood exists that the remedies conferred overlap. Regardless of whether back pay is an element of compensatory damages or whether it is better characterized as a type of equitable relief, a district court cannot consider back pay to be both without creating the risk of duplicative remedies. "[T]he law abhors du-

ages. We do not agree that it was error to give that instruction.

plicative recoveries." *Dopp v. HTP Corp.*, 947 F.2d 506, 517 (1st Cir.1991). Once the district court allowed the jury to incorporate back pay as part of its compensatory damages award, the court could not separately award back pay without improperly speculating on the jury's basis for awarding damages. *See Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 580 (6th Cir.1994). Based on the district court's instruction on damages, the jury could have awarded Collins back pay as part of its award of compensatory damages. *See Standley v. Chilhowee R–IV Sch. Dist.*, 5 F.3d 319, 324 (8th Cir.1993). Thus, we must vacate the district court's judgment for the amount of wages and benefits that ETC unlawfully withheld when it reduced Collins from full-time to part-time employment.

For the foregoing reasons, we AFFIRM the judgment against ETC; VACATE the judgment against Kibort; VACATE the jury's award for compensatory damages and the district court's award of back pay; and REMAND for a new trial on damages.