**Candace KARCZYNSKI, Plaintiff,**

v.

**SPECIALTY EQUIPMENT MANUFACTURING, INCORPORATED, Defendant.**

**No. 99 C 4271.**

United States District Court, N.D. Illinois, Eastern Division.

July 25, 2000.

Brian F. DeCook, Matteson, IL, for plaintiff.

Philip Michael Fornaro, Dvorak, Edmonds & Sbertoli, Ltd., Westchester, IL, Bruce M. Rose, Law Office of Bruce Rose, Westchester, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the court grants defendant's motion for summary judgment.

## I. BACKGROUND[1]

Plaintiff Candace Karczynski ("Karczynski") is a female who worked for defendant Specialty Equipment Manufacturing, Incorporated ("World Dryer")[2] from January 2, 1985 to June 4, 1998 at its Berkeley, Illinois office. World Dryer originally hired Karczynski as a customer service representative. Then on April 17, 1995, Karczynski became the Customer Service Manager.

On November 1, 1997, at Karczynski's request, World Dryer transferred her into the credit and collections department where she was assigned to handle the accounts payable and accounts receivable. World Dryer created this position to fit Karczynski's experience and request. However, because of her lack of any previous accounting experience, Tom Vic ("Vic"), World Dryer's Vice President of Operations, warned Karczynski that in or-

1. Unless otherwise indicated, the following facts are taken from the parties' Local Rule 56.1(a)(3) and 56.1(b)(3) Statements.

2. Karczynski incorrectly named Specialty Equipment Manufacturing Corporation as Specialty Equipment Manufacturing, Incorporated. Regardless, the World Dryer Division of the corporation employed Karczynski. Thus, the court will refer to Karczynski's employer as World Dryer.

der to function in her new position, she may need to read a text or take a course in basic accounting. Over the next six months, Vic monitored Karczynski in her new position and discussed the majority of her duties with her. Vic gradually became concerned that Karczynski was not taking on all of the duties that he expected her to assume in her new position. His concern, however, was not over the quality of her work; it was over the quantity. As a result, Vic did not assign to Karczynski all the additional projects which he would have liked her to handle.

In May of 1998,[3] Vic spoke with Randy Cordova ("Cordova"), World Dryer's President, on several occasions about Karczynski's performance. During one of these meetings, Vic told Cordova that the department was shorthanded and, thus, that he had decided to speak to Karczynski about completing more of her duties. In addition, Vic intended to give her a list of her duties, discuss them with her and to work closely with her. Cordova approved of these suggestions. At another meeting, Cordova explained to Vic that Karczynski was a valued employee and if she was not working well in Vic's department, that he (Cordova) would find her another position.

Shortly thereafter, according to Linda Kilbryde ("Kilbryde"), World Dryer's Vice President of Marketing, Vic asked her to speak with Karczynski about her work performance.[4] From her conversation with Vic, it was Kilbryde's understanding that Karczynski was performing only about two-thirds of her contemplated duties.

On May 26, 1998, Kilbryde met with Karczynski. During the initial part of the meeting, the two discussed Karczynski's pregnancy, which Karczynski had announced on May 11, 1998, and Kilbryde wished her well. During the remainder of the meeting the two discussed Karc-

zynski's performance and Karczynski's complaints to other employees about her position. Regarding Karczynski's performance, Kilbryde told her that Vic had suggested that it may be helpful for Karczynski to take some basic accounting classes. In addition, Kilbryde explained to Karczynski that she too had taken some classes to help her with her own job responsibilities. In response, Karczynski asked for specific examples of her deficiencies. Kilbryde replied that Karczynski should discuss the deficiencies with Vic. Regarding Karczynski's complaints, Kilbryde told Karczynski that rather than staying in a job which made her unhappy, that she (Kilbryde) would find another job which would make her happy. Kilbryde concluded the meeting by asking Karczynski to refrain from complaining to other employees. At no time during this meeting did Kilbryde threaten to fire Karczynski, tell Karczynski she was on thin ice or state that World Dryer was going to take any type of disciplinary action. Following the meeting, Kilbryde placed a memo documenting the meeting in Karczynski's personnel file. This memo, however, was not a formal "write-up" of a disciplinary problem.

In response to this meeting, Karczynski met with Cordova. During this meeting, Cordova told Karczynski essentially the same things which Kilbryde had previously told her—that Vic was concerned about her failure to complete all of her work.

On or about May 27, 1998, Vic prepared and gave to Karczynski a memo detailing her duties. Following this, Vic and Kilbryde met with Karczynski on June 3, 1998 to go through the list of her duties and to hear her responses. During this meeting, Vic told Karczynski that he wanted her to take on more duties, to take some basic accounting classes and to be in the office until 6:00 p.m. In addition, he

---

**3.** The parties dispute whether these meetings occurred in early or late May.

**4.** Vic does not recall if he specifically asked Kilbryde to meet with Karczynski. In his

deposition, he states only that he may have asked Kilbryde to do so. (Vic Dep. at 26:13–15.)

also told her that she "had a big mouth" because she had "been complaining to everybody." (Karczynski Dep. at 89:22, 90:2.) Karczynski interpreted Vic's statements to mean that he was unhappy with her work and now claims she did not understand why all of a sudden she was a terrible employee. So, in response, Karczynski became upset, began to cry, said "I can't deal with this. I cannot continue this conversation," (*Id.* at 91:10–11), and went home for the day.

The following day, June 4, 1998, Karczynski's employment with World Dryer ended. The parties are in dispute as to what occurred during this meeting. Karczynski alleges that Vic fired her but gave her no reason for doing so. (Pl.'s 56.1(b) Response at ¶ 79.) However, Karczynski admits that neither Vic nor Kilbryde gave her any indication that she was allegedly fired because World Dryer did not want to pay for her six-week maternity leave. (*Id.* at ¶¶ 79–80.) On the other hand, World Dryer, alleges that at no time did anyone fire Karczynski. (Def.'s 56.1(a) Statement at ¶ 81.) According to World Dryer, Karczynski quit on June 4, 1998. (*Id.*)

On July 5, 1998, World Dryer sent Karczynski's final paycheck and vacation pay via overnight delivery. Upon receipt of her final check, Karczynski telephoned Sue Grammas ("Grammas"), World Dryer's Human Resources Administrator, to inquire about her severance pay. No one returned her call to answer her inquiries. However, Cordova and Vic discussed whether or not Cordova should contact Karczynski. After discussing the matter, Vic suggested that Cordova could call but that Karczynski did not directly report to him, so it would be "somewhat out of line" for Cordova to call her. (Cordova's Dep. at 31:24 & 32:1–3.) Furthermore, Vic testified that if Karczynski had contacted him about returning to work, he would have considered her request.

Subsequently, on August 7, 1998, Karczynski filed a charge of discrimination against World Dryer with the Illinois Department of Human Rights ("IDHR").

During the proceedings, Cordova, Kilbryde and Vic stated under oath that Karczynski's pregnancy played no role in her leaving the company. Furthermore, they each testified that she resigned her employment, not that World Dryer terminated her employment. Within a week of the proceedings, Karczynski voluntarily withdrew her charge of discrimination with the IDHR.

On June 28, 1999, Karczynski filed a complaint against defendant claiming that World Dryer violated the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), when it terminated her employment due to her pregnant condition. On September 2, 1999, Karczynski filed a "First Amended Complaint for Damages." In her amended complaint, Karczynski alleges the same violation of the Pregnancy Discrimination Act by World Dryer.

The matter is currently before the court on World Dryer's motion for summary judgment. World Dryer contends that it is entitled to judgment as a matter of law because (1) Karczynski has failed to set forth any evidence of discrimination based on her pregnancy and (2) even if Karczynski has set forth evidence of discrimination, World Dryer would have had a legitimate nondiscriminatory reason for allegedly terminating her employment.

## II. DISCUSSION

### A. *Standard for deciding a motion for summary judgment*

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the

non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Smith v. Severn,* 129 F.3d 419, 425 (7th Cir.1997).

The burden is on the moving party to show that no genuine issues of material fact exist. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Once the moving party presents a prima facie showing that he is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505; *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989).

### B. *Pregnancy Discrimination*

Karczynski claims that World Dryer discriminated against her because she was pregnant, in violation of the Pregnancy Discrimination Act. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion," or sex. 42 U.S.C. § 2000e–2(a)(1). The Pregnancy Discrimination Act amended Title VII to include pregnancy as a basis for discrimination because of an employee's sex. *Id.* § 2000e(k).

▪ To prevail on her claim, Karczynski must show that World Dryer treated her differently because of her pregnancy. Discrimination may be established in either of two ways—(1) through the direct or "mixed motives" method or (2) through the indirect burden-shifting method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Marshall v. American Hosp. Ass'n,* 157 F.3d 520, 525 (7th Cir.1998). Under either method, Karczynski must produce enough evidence

to allow a jury to infer that Karczynski's pregnancy was the motivating factor in World Dryer's alleged decision to fire her. *See Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344, 1350 (7th Cir. 1995).

### 1. *Direct or "mixed motives" method*

▪ Under the direct evidence method, the "plaintiff initially must prove 'through direct evidence that the employment decision at issue was based upon an impermissible factor.'" *McCarthy v. Kemper Life Ins. Cos.,* 924 F.2d 683, 686 (7th Cir.1991) (quoting *Randle v. LaSalle Telecomms., Inc.,* 876 F.2d 563, 568 (7th Cir.1989)). The evidence "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." *Randle,* 876 F.2d at 569. A statement is direct evidence only if it relates to the "motivation of the decision maker responsible for the contested decision." *Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 396 (7th Cir.1997).

In this case, Karczynski has not alleged that anyone from World Dryer made derogatory comments regarding her pregnancy or pregnancy in general. Thus, the trier of fact could not conclude that Karczynski's alleged termination was the result of any animus due to her pregnancy without adopting certain inferences and presumptions.[5] That—by definition—is not direct evidence. *See Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir.1997) ("Direct evidence would be what [defendant] and its employees said or did in the specific employment decision in question.").

▪ Thus, Karczynski attempts to meet her burden with circumstantial evidence. Circumstantial evidence is evidence that provides "a basis for drawing an inference of intentional discrimination." *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994). There are three

---

5. For purposes of this motion, the court will assume that World Dryer fired Karczynski.

types of circumstantial evidence which Karczynski could rely upon in order to avoid the *McDonnell Douglas* burden-shifting method: (1) evidence consisting of "suspicious timing, ambiguous statements, oral or written, behavior directed toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn;" (2) evidence that similarly-situated employees who were not pregnant received systematically better treatment; and (3) evidence that "the plaintiff was qualified for the job in question but ... [was] replaced by a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, or a mere pretext for discrimination." *Id.*

Karczynski relies upon all three types of circumstantial evidence. First, Karczynski alleges that the timing of her alleged firing by World Dryer is suspicious because it occurred one month after she informed World Dryer of her pregnancy. However, "timing alone does not create an inference of discrimination." *Marshall,* 157 F.3d at 526 (citing *Hunt–Golliday v. Metropolitan Water Reclamation, Dist.,* 104 F.3d 1004, 1011 (7th Cir.1997)). Karczynski must show some type of connection between her alleged firing and her pregnancy announcement. *Id.* According to Karczynski, her circumstantial evidence of discrimination is:

> (1) Kilbryde suggested to Karczynski that if Karczynski wasn't happy at World Dryer, she should leave; (2) Cordova told Karczynski that she was a valued employee; (3) Cordova told Vic and Karczynski that if things didn't work out for Karczynski in accounting, he would find her another job at World Dryer, but he never did; (4) Vic never referred Karczynski to Cordova for reassignment and even discouraged Cordova from calling her after she was terminated; (5) Karczynski's final paycheck was sent via overnight delivery the day after she 'quit'; (6) Karczynski contacted Sue Grammas on June 6, 1998 to request someone to contact her regarding her severance pay; (7) Cordova knew that Karczynski had contacted World Dryer after the termination, but never called her back; (8) Vic testified that if Karczynski contacted him about returning to World Dryer, he would have considered the request; (9) World Dryer had no doubt that Karczynski would not be returning after June 5, 1998; and (10)[n]o attempt was made to contact a pregnant, 13 year employee who allegedly walked off the job hysterical and without explanation.

(Pl.'s Resp.B. at 9.) Despite the fact that some of these assertions are not supported by the evidence, none of these comments or actions have anything to do with Karczynski's pregnancy nor do they indicate that World Dryer allegedly terminated Karczynski because of her pregnancy. Karczynski also alleges that Robin Urgo ("Urgo"), the only other full-time employee in the accounting department, is a non-pregnant employee who World Dryer treated better. However, Karczynski has presented no evidence that Urgo, like Karczynski, was also not completing all of her assigned duties. Thus, there is no evidence that Urgo is a similarly situated non-pregnant employee. Karczynski has failed to show either a connection between her pregnancy and her alleged termination or that, if all the facts were identical but she were not pregnant, she would have been treated differently. Thus, she has failed to satisfy her burden. *See Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 725–26 (7th Cir.1998); *Piraino v. International Orientation Resources, Inc.,* 137 F.3d 987, 991 (7th Cir.1998); *Hunt–Golliday,* 104 F.3d at 1011; *Marshall v. American Hosp. Assn.,* No. 95 C 4690, 1997 WL 285716, at *5–7 (N.D.Ill. May 22, 1997). Finally, Karczynski alleges that World Dryer's allegation that she resigned is a mere pretext. However, because the court is assuming that World Dryer fired Karczynski, her argument is irrelevant. Because there is no direct evidence of discrimination, the court will ex-

amine Karczynski's case under the *McDonnell Douglas* burden-shifting method.

### 2. *McDonnell Douglas burden-shifting method*

Under *McDonnell Douglas,* the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of employment discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. To establish a prima facie case, Karczynski must show: (1) she belongs to a protected group; (2) she performed satisfactorily; (3) she was subjected to an adverse employment action; and (4) similarly-situated employees outside of her classification received more favorable treatment. *Hughes v. Brown,* 20 F.3d 745, 746 (7th Cir.1994). If the plaintiff establishes a prima facie case, then "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its allegedly biased employment decision." *Johnson v. City of Fort Wayne,* 91 F.3d 922, 931 (7th Cir.1996). If an employer meets its burden, then the plaintiff must show, by a preponderance of the evidence, that the employer's stated reason for dismissal is nothing more than pretext or a lie. *Id.* There are three ways to show that the proffered, nondiscriminatory explanation is pretextual: (1) the employer's explanation has no basis in fact; (2) the explanation was not the "real" reason; or (3) the explanation was insufficient to warrant the adverse employment action. *Id.*

Karczynski's claim of employment discrimination is based on World Dryer's decision to allegedly terminate her employment. Karczynski is a female who was pregnant at the time of her alleged termination, thus she is a member of a protected class. Accordingly, the first element of her prima facie case is not in dispute. Furthermore, although the parties dispute whether World Dryer terminated Karczynski's employment, the court, for purposes of this motion, will assume that element three of the prima facie case is also met.

■■■ World Dryer, however, contends that Karczynski has failed to establish both element two and element four of the prima facie case. A plaintiff can establish the second element of the prima facie case through her own testimony that her performance was satisfactory. *Weihaupt v. American Med. Ass'n,* 874 F.2d 419, 428 (7th Cir.1989). Karczynski contends that her performance was satisfactory until World Dryer transferred her to the accounting department. However, her performance must have been satisfactory at the time of her alleged termination—not just at some time during her employment. *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1262 (7th Cir.1993). At the time of her alleged termination, World Dryer had discussed with Karczynski her failure to complete all of her assigned tasks. Karczynski does not dispute this. Thus, Karczynski has failed to establish that her performance was satisfactory at the time of her alleged termination.

By not establishing element two of the prima facie case, Karczynski has failed to meet her burden of establishing a prima facie case of discrimination.[6] Thus, the court will not address World Dryer's burden of offering a legitimate, nondiscriminatory reason for terminating Karczynski's employment. Accordingly, the court grants World Dryer's motion for summary judgment on Karczynski's amended complaint.

### *CONCLUSION*

For the foregoing reasons, the court grants World Dryer's motion for summary judgment. Final judgment in this case is entered in favor of defendant Specialty

---

**6.** The court will not, therefore, go into a detailed discussion of the fourth element. However, Karczynski's prima facie case would also fail based on the fourth element. Karczynski has not identified any similarly situated employee outside of her protected class that World Dryer retained. *See* Part II.B.1 (discussing Urgo).

Equipment Manufacturing, Incorporated and against plaintiff Candace Karczynski.